THE WYOMING.

THE DACOTAH.

BOSCHERT *v.* THE WYOMING.

SAME *v.* THE DACOTAH.

*(District Court, E. D. Missouri, E. D.    October 20, 1888.)*

1. MARITIME LIENS—GOODS SOLD FOR SPECULATIVE PURPOSES.
   There is no lien for salt purchased by the owners of a steamer to be taken to another port and sold upon speculation, the same not having been furnished as supplies.

**2. SAME—AFFREIGHTMENT CLAIMS.**

A claim for merchandise, for which a steamer issued its bill of lading, but which it failed to deliver, may be classified and paid as an affreightment claim.

**3. SAME—DOUBLE CHARGES COLLECTED FOR FREIGHT.**

A claim for the amount which the steamer compelled the consignee to pay in addition to the price of transportation which was agreed upon and paid in advance is allowable.

**4. SAME—WAGES OF MASTER.**

The master has no lien for wages.

**5. SAME—SERVICES OF STEVEDORE—HOME PORT.**

In the absence of statute there is no lien for a stevedore's services rendered in the home port, and not shown to have been rendered on the credit of the vessel.

**6. SAME—ADVANCES TO PAY LIENS.**

Though money advanced to pay claims that are liens either under the maritime law or under a statute may become a lien, it must be clearly shown that it was advanced on the credit of the vessel to pay lien claims, and that it was so used; and if advanced to two vessels it must also be shown how much was advanced to each; but it is not necessary that each claim paid should be proved if it appears that the amount advanced was all disbursed in paying lien claims.

**7. SAME—PRIORITY OF CLAIM.**

A claim for moneys expended at the request of the owners to discharge lien claims for supplies and wages will be allowed and classified as a claim for supplies.

**8. SAME—MONEY COLLECTED AS AGENT, AND EXPENDED FOR SUPPLIES.**

Money collected by a steamer, as agent, from consignees, and used to pay ordinary running expenses, such as fuel and wages claims, may be treated as loaned on her credit to pay lien claims, though not amounting to a breach of the contract of affreightment.

**9. SAME—SERVICES—LACHES.**

There is no lien for services rendered more than two years before the vessel is libeled, especially where the proof in support of the claim is otherwise unsatisfactory.

**10. SAME—SUPPLIES—LACHES.**

Claims for wood furnished in July and August, 1887, at way landings at which the vessel touched very irregularly, amounting to $67, are not stale on libel filed in April, 1888, there having been no apparent occasion for proceedings to enforce them, and the amount not justifying such proceedings, and no one having been prejudiced by the delay.

In Admiralty. Decision on claims.

Libels and intervening petitions for labor, materials, and supplies furnished. For opinion, on exceptions, see 35 Fed. Rep. 548.

*George J. Davis,* for libelant.

*Campbell & Ryan, Charles S. Hayden, Cochran, Dickson & Smith,* and *Charles G. B. Drummond,* for intervening libelants and petitioners.

THAYER, J. Claim No. 3,446, of James F. Ewing, agent, etc., and claim No. 3,447, of James F. Ewing, agent, etc., are disallowed. The petitioners sold the steamers a large quantity of salt, in one instance 200 barrels, in the other, 500 barrels. The salt was not bought as "supplies" for the steamers, and was not so furnished. It was bought by the owners of the same, to be taken up the river and sold on speculation. No lien exists in favor of such demands.

Claim No. 3,428, of Sells & Co. *vs.* Wyoming; claim No. 3,429, of Sells & Co. *vs.* Dacotah; and claim No. 3,448, of Halliday & Phillips

Wharfboat Co. *vs.* Dacotah. These claims should be allowed, and it is so ordered. It appears that each steamer collected certain moneys from consignees on delivery to them of certain merchandise received for transportation. The money collected belonged to the several claimants. The steamers acted merely as their agents in making the collections. Before the return trip was concluded, the money so collected was used to pay ordinary running expenses of the steamers, such as fuel and wages claims. Claimants are now entitled to treat the money as loaned on the credit of the steamers to pay lien claims, even if the several acts did not amount to a breach of affreightment contracts.

Claim No. 3,438, of James Sharp & Co. *vs.* Dacotah. This claim will be allowed in the sum of $27.36. The proof shows that the steamer issued its bill of lading for certain merchandise, including one tierce of lard, which it failed for some reason to deliver. It will be classified as an affreightment claim, and paid accordingly.

Claim No. 3,423, of the Cleveland, Columbus, Cincinnati & Indianapolis Railway *vs.* The Dacotah, is allowed in the sum of $30. The steamer was paid in advance for the transportation of 240 kegs of nails from East St. Louis to Kansas City. It received the property, but compelled the consignee to pay $30 in addition to the price agreed upon when it received the property.

Claim No. 3,437, of E. J. Duncan *vs.* The Dacotah, is allowed without comment, and classified as a supply claim.

Claim No. 3,454, of the Washington Ferry Co. *vs.* The Dacotah, and claim No. 3,455, of Samuel E. Vaughn *vs.* The Dacotah. The only possible objection to these claims is, that they are stale. The claims are for wood taken at way landings on the Missouri river, July 9, 31, and August 23, 1887. The libels were filed April 9, 1888. The claims are small, amounting to $29.25, and $37.50, respectively. The steamers touched very irregularly at the places where the wood was taken. There was no apparent occasion for taking steps to enforce the claims by legal proceedings, nor would the amount of the demands justify such proceedings. Furthermore, no one appears to have been prejudiced by the delay. For these reasons the claims will each be allowed and classified as supply claims. *Coburn* v. *Insurance Co.*, 20 Fed. Rep. 644, and *The Thomas Sherlock*, 22 Fed. Rep. 253–256.

Claim No. 3,435, of Roche & Coyne *vs.* The Dacotah, is a claim for unloading the steamer at St. Louis, Mo., "to enable her to proceed on her voyage." It is therefore a stevedore's demand. Whether a stevedore performs a maritime service, and is entitled to a lien for such service, is a question that has been decided differently in different districts. The authorities are referred to by Judge PARDEE, *The Esteban de Antunano*, 31 Fed. Rep. 924. In this district it has been heretofore held that such services are of a maritime character, and that a lien exists therefor, even in the home port, when the service is shown to have been rendered on the credit of the vessel, or when such fact is fairly inferable from the circumstances under which the service was rendered. *The Henry Ames*, U. S. Dist. Court, East. Dist. Mo., No. 2,444. There was no proof fur-

nished in this case that the service was rendered on the credit of the steamer; nor can such fact be inferred. On that ground alone the claim is disallowed, as the state statute does not make it a lien.

Claim No. 3,414, of William D. Shanks, vs. The Dacotah; claim No. 3,452, of George G. Keith vs. The Dacotah; claim No. 3,451, of George G. Keith vs. The Wyoming; and claim No. 3,453, of Henry Keith vs. The Wyoming. Of the above claims Nos. 3,452 and 3,453 must be rejected, because preferred by the master, who has no lien for wages.

Claim No. 3,414 will be allowed in the sum of $200, the residue having been heretofore allowed and paid. The sum now allowed will be classified as a claim for supplies, inasmuch as it appears to have been expended at the request of the owners to discharge claims for supplies and wages that were liens against the steamer Dacotah.

Claim No. 3,451 is rejected. A portion of the same is not a lien. The residue of the claim is stale, being for services rendered more than two years before the steamer was libeled. The proof in support of the claim is otherwise unsatisfactory.

The residue of the claims, to-wit: Claim No. 3,400, of the P. P. Manion Blacksmith & Wrecking Co. vs. The Dacotah; claim No. 3,401, of John Jackson vs. The Dacotah; claim No. 3,405, of Ward and Brady vs. The Dacotah; claim No. 3,407, of Cairo City Coal Co. vs. The Dacotah; claim No. 3,412, of T. T. Lewis vs. The Dacotah; claim No. 3,402, of John Jackson vs. The Wyoming; claim No. 3,405, of Ward and Brady vs. The Wyoming; and claim No. 3,417, of T. T. Lewis vs. The Wyoming,—may be conveniently considered together. All of them contain charges for money said to have been advanced to pay wages or supply claims against the steamers. A question arises in each case as to the existence of a lien on account of the alleged money advancements. It is well settled that money advanced to pay maritime claims that are a lien by virtue of the maritime law, or a local statute, may itself become a lien against the vessel whose debts have thus been discharged. But in order to establish a lien for money advanced it must be clearly shown that it was advanced on the credit of the vessel to pay lien claims, and that it was so used. If money is advanced generally to aid in running a steam-boat or other craft, no lien arises unless it be for such specific portion of the money so advanced, as is clearly shown to have been used in discharging claims that were liens. Furthermore, if money is advanced to aid in running two steam-boats, no lien can be allowed against either unless the proof shows how much was advanced in behalf of each, and for what purpose it was used. A lien is of that nature that it must be made definite in amount by the person asserting it. The Grapeshot, 9 Wall. 129; The Guiding Star, 9 Fed. Rep. 523; The Guiding Star, 18 Fed. Rep. 264; The Gen. Tompkins, 9 Fed. Rep. 620; The Thos. Sherlock, 22 Fed. Rep. 254; The Cumberland, 30 Fed. Rep. 453. It is not essential, however, that each particular claim discharged by a money advancement should be proven, if it is established with reasonable certainty that the fund was all disbursed in the payment of a class of claims that were liens. Testing the claims by the rule last stated, I have no doubt

that the claims Nos. 3,407 and 3,405 against The Dacotah should be allowed in full, as well as claim No. 3,404, against The Wyoming. The money advancements embraced in these claims, are shown to have been expended in paying lien claims. These claims are accordingly allowed in full. Claim No. 3,407 embraces an item of $129, and claim No. 3,404 an item of $175, that are entitled to payment as wages claims, the money having been advanced and used to pay wages. I am also of the opinion that the claim of the P. P. Manion Blacksmith & Wrecking Company should be allowed to the amount of $1,308.62, and no more. The evidence renders it reasonably certain that $969.94 was advanced and used to pay off a lien for repairing the steamer's shaft, and that $350 was advanced and used to pay for moving and erecting the shaft. The item $213.06 is not satisfactorily established as a lien, and is disallowed. Tested by the rule above announced, claims Nos. 3,401 and 3,402 (preferred by John Jackson) are not established as liens, and cannot be allowed as such. The money was advanced generally to "Hunter Ben Jenkins, manager of steamers Wyoming and Dacotah." It is not shown with any degree of certainty that the money was all used, or that any definite portion was used in paying lien claims. Moreover, it is not shown with any certainty how much was so used in behalf of each steamer. Jenkins is unable to state how much was used in the payment of any particular class of claims, or what claims were in fact paid with the money so advanced, and Mr. Jackson has no knowledge on that subject. What has been said respecting claims Nos. 3,401 and 3,402 applies with even greater force to claims Nos. 3,412 and 3,417, in favor of T. T. Lewis, and both of the latter claims are accordingly rejected on the same grounds.

In the distribution to be ordered, wages claims will rank first, claims for materials and supplies next, and claims under contracts of affreightment thereafter. If there should be any surplus after the lien claims are satisfied, a question may arise whether the mortgagees are entitled to it, or whether it should be awarded to Jackson and Lewis. That question is reserved for further consideration if there shall be any occasion to determine it.