## THE ELSE.

District Court, S. D. Alabama. July 26, 1928.

Shipping ⟜69—Master has lien on freight, though not on ship, for wages.

While the master has no lien on the ship for his wages, he has a lien on the freight.

In Admiralty. Libel by the master and crew of the schooner Else for wages due, in which the Mobile Towing & Wrecking Company and another intervened, and excepted to the master's report as to liens and priorities. Exceptions overruled.

Pillans, Cowley & Gresham, of Mobile, Ala., for libelants.

Smiths, Young & Johnston, of Mobile, Ala., for interveners.

ERVIN, District Judge. The schooner and her freight was libeled by the master and crew for the wages owing to them. The owners being unable to make bond, the schooner was sold pendente lite, and her proceeds and the freight money were paid into court. There was a reference to determine the liens and, priorities, and a report by the master, in which he found that the lien claims exceeded the proceeds of both ship and freight, that the claims of the seamen were entitled to priority, and that the master had a maritime lien on the freight money, but not on the ship, which was prior to the claims of the two interveners, and therefore that the seamen should be paid, first from the proceeds of the ship, and the balance of their claims should be paid out of the freight money. The interveners excepted to the report of the master, in so far as it held that the master of the schooner had a lien which was prior to theirs upon the freight money.

There are not many authorities on the question, but I am persuaded that the rule laid down in Drinkwater v. The Spartan, Fed. Cas. No. 4,085, by Judge Ware, where he holds that, while the master has no lien upon the ship for his wages, he has a lien on the freight, is correct. The same rule is laid down in The Arcturus (D. C.) 17 F. 95, without any discussion of the question; also in the note to The Bowditch, Fed. Cas. No. 1,717.

I have found no express opinion by the Supreme Court on the question, but in The William M. Hoag, 168 U. S. 443, 18 S. Ct. 114, 42 L. Ed. 537, the court, having before it the question of whether or not the master had a lien upon the ship, uses the following language:

"The denial of the lien of the master was based upon the theory that he had a lien upon the freight for his wages, and having the freight in his own hands was presumed to pay himself. The argument is made that, the reason for the rule having ceased to exist, the rule itself, which denied the master a lien upon the vessel, has become obsolete."

In this case the court declined to hold that the master had a lien on the vessel, but arguendo seems to concede a lien on the freight.

I am cited The Orleans v. Phoebus, 11 Pet. 175, 9 L. Ed. 677, Norton v. Switzer, 93 U. S. 355, 23 L. Ed. 903, The Short Cut (D. C.) 6 F. 630, The Vandercook (D. C.) 24 F. 472, and The Wyoming (D. C.) 36 F. 493, as holding that the master has no lien for his wages. These cases do so hold, but in each case the question was whether or not the master had a lien on the ship, and not whether he had a lien upon the freight. I have found no American case holding directly that the master has no lien upon the freight.

It is urged on me in this case that freight is an incident to the ship, and that, if there is no lien upon the ship, there can be none against the freight, and U. S. v. Robins Dry Dock & Repair Co. (C. C. A.) 13 F.(2d) 808, is cited to establish this proposition. In that case the question arose, not between the master and the shipowners, or interveners, but between persons who had either made repairs or furnished supplies for the ship, at the instance of a charterer, who, in his charter, had agreed that he would permit no lien or charge against the vessel while in his possession. These claimants asserted no claim to any lien upon the freight, except through a lien upon the ship, and the conclusion there reached was, in my opinion, correct; but a very different proposition arises when the master asserts the claim of lien. The lien claimants in the Robins Case had no dealings whatever with the freights; all their dealings were with the ship. On page 812 of the opin-

ion in the Robins Case, the proposition urged is as follows:

"It is urged by the learned proctor for the Standard Oil Company and the McCormack Stevedoring Company, Inc., that these lienors are entitled to maritime liens against the freights for all the supplies and labor furnished by them; that freights are entirely distinct from the ship herself; that, even though the court shall find that the lienors did not use reasonable diligence in ascertaining the terms under which the Elder Company was in possession of the Neponset, and even though the lienors should be held to be charged with knowledge of the terms of the agreement * * * between the Elder Company and the Shipping Board, and prohibited from acquiring liens on the ship, these lienors may still enforce their liens upon the freight, inasmuch as freights are entirely distinct from the ship. They insist that, under general maritime law, the furnishers of supplies and labor are entitled to a maritime lien against the freights which the supplies and labor helped to earn."

It is interesting to note in the opinion, 13 F.(2d) on page 813, the court, in its discussion of the proposition, says:

"In The Bowditch, 3 Ware, 71, 74, Fed. Cas. No. 1,717, Judge Ware said: 'The reason given for refusing the master a lien on the freight is that he has no lien on the ship for his wages and that the freight is incident to the ship. But the master is authorized to receive the freight, and if he has it in his hands he may pay himself.' See, also, Drinkwater v. Spartan, 1 Ware, 145, Fed. Cas. No. 4,085. It will be seen that Judge Ware based his definition upon the theory that a maritime lien on freights and the remedy in rem for freight money depend upon the like remedy being available against the ship."

I submit the eminent court here quotes Judge Ware as saying something which he never said, and further that they here put him down as making an argument which he never made. If the headnote in the Bowditch Case is correct, as showing that the master was one of the libelants, then in that case Judge Ware expressly rules the master had a lien for his wages, and certain it is that nowhere in the opinion is any dissent made from the former opinion by the same judge in the Drinkwater Case, where he had laid down the rule at some length and supported it by strong arguments.

Now, an examination of The Bowditch, Fed. Cas. No. 1,717, opinion by Judge Ware, will show that this quotation is not found in that case at all, but is made from the note

to the case. The case seems to have been reported by George F. Emery. The first headnote in The Bowditch reads as follows:

"The master has a lien on the freight for his wages, and necessary disbursements for the use of the ship."

This headnote explains the case to some extent, and indicates that the master was one of the seamen who filed the libel for their wages, otherwise such headnote could not have been written for the case. The opinion states in the first paragraph:

"This is a libel against the owners of the schooner Bowditch by the seamen for their wages."

If I am correct, therefore, in my assumption that the master was one of the seamen who claimed wages in the libel, then it would be extremely odd that Judge Ware should hold that the master had a lien on the freight for his wages, in the body of the opinion, but in a note to the same opinion should state that he had no such lien. This apparent inconsistency is, however, easily explained when we read the whole note, which is as follows:

"It seems to be well settled in *this country* that the master has a lien on the freight for his necessary disbursements, for incidental expenses, and his liability for such expenses and also for his own wages. Note to Abb. Shipp. p. 147, and the cases there cited; 1 Ware, 149 (Drinkwater v. Spartan, Fed. Cas. No. 4,085); [Ingersoll v. Van Bokkelin] 7 Cow. [N. Y.] 670; 3 Mason, 255 (The Packet, Fed. Cas. No. 10,654); [Richardson v. Whiting] 18 Pick. [Mass.] 530. Though, notwithstanding the decision of Lord King in White v. Baring, 4 Esp. 22, *it is otherwise settled in England*. Smith v. Plummer, 1 Barn. & Ald. 575; Abb. Shipp. 147, 377, note. The reason given for refusing the master a lien on the freight is that he has no lien on the ship for his wages and that the freight is incident to the ship. But the master is authorized to receive the freight, and if he has it in his hands he may pay himself, though he has no personal claim against the owners; for when there are cross demands it is only the balance that is due. See, further, *as to the English law*, Abb. Shipp. 656, note." (Italics mine.)

We see here in the beginning of the note a statement of the American rule; later on the English rule is stated in the words quoted in the Robins Case. So it was not the statement or opinion of Judge Ware that was quoted, but a British one, and that was just the reverse of Judge Ware's.

The fact that it is the duty of the master

to collect the freights, and out of them to pay the expenses of the vessel, the wages due to seamen, and his own wages, differentiates the instant case from the Robins Case.

As "freight is the mother of wages," and it is not only the duty, but the right, of the master to pay all wages, including his own, before turning over the balance of the freight, and as the master is under a personal liability to the seamen for their wages, it is eminently proper and just, in my opinion, that the master should have a lien upon the freight to secure him against loss, as well as to reimburse him for payments made by him.

All the cases, so far as I know, hold that the master has a lien on the freight for money which he may expend for the benefit of his ship, but has no lien upon the ship itself for these advances. This completely answers the general proposition laid down in the Robins Case that no lien could be had upon the freights, unless there is also a lien upon the vessel.

The exceptions to the master's report will be overruled.