John R. **PETERSON** et al., Libellants,

v.

S. S. **WAHCONDAH** et al., Respondents.

Admiralty No. 5417.

United States District Court
E. D. Louisiana,
New Orleans Division.

Dec. 2, 1964.

**FRANK B. ELLIS, District Judge.**

When this litigation last appeared in this Court it had already navigated a tortuous path. At that time, in distributing the funds remaining from the sale of the vessel, two claims were disallowed and the balance was ordered paid to Miami Marine Service, Inc. (Miami), the former agent and present owner of the vessel. Peterson v. S. S. Wahcondah, 216 F.Supp. 642 (E.D.La.1963). In the meantime the Fifth Circuit Court of Appeals has, in effect, affirmed the dismissal of those two claims, reversed the distribution of the remaining funds to Miami, and remanded the case for further proceedings and a determination of "libelants' claim for statutory penalties which may have been due them under the provisions of 46 U.S.C.A. § 596." Peterson v. S. S. Wahcondah, 331 F.2d 44, 49 (5 Cir. 1964).

Libellants then filed interrogatories on Miami, and based primarily on answers to those interrogatories now move for summary judgment under Admiralty Rule 58 as to the question of penalty wages. They allege, in support of their motion, that funds in the form of earned freight were available to pay their wages when they initially became due, and that the withholding of those wages was an arbitrary and willful refusal entitling libellants to recover penalty wages.

The Act granting merchant seamen the right to recover penalty wages provides, *inter alia:*

> "Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned *without sufficient cause* shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, * * *." (Emphasis supplied.) 46 U.S.C.A. § 596.

Miami's defense is, basically, that the earned freight did not accrue to the owner of the vessel, but to a time-charterer, and that since the owner was insolvent at the time and the vessel produced no further income, sufficient cause existed

Fernand F. Willoz, III, New Orleans, La., for libellants.

Samuel C. Gainsburgh, Kierr & Gainsburgh, New Orleans, La., for respondent Miami Marine Service, Inc., intervenor.

to support the failure to pay wages and prevent the claim for penalty wages herein.

■ It is now clear that insolvency of the owner and "the arrest of the vessel, subject to accrued claims beyond its value" constitutes sufficient cause to relieve the owner from statutory liability for penalty wages. Collie v. Fergusson, 281 U.S. 52, 54, 50 S.Ct. 189, 191, 74 L.Ed. 696 (1930); Peterson v. S. S. Wahcondah, 331 F.2d 44, 48 (5 Cir. 1964). Here the owner was insolvent, having filed bankruptcy proceedings in March, 1962, and even though the vessel was not seized until September 19, 1962, after the crew's wages became due there apparently was no income produced by the vessel.

Wages had been paid the crew through May 1, 1962. Thereafter the vessel was under time-charter to Florida Inter-Island Shipping Corp. at a rate of $11,-500.00 per month, and on June 20, 1962, a shipment of Costa Rican sugar was unloaded at the Colonial Sugar Refinery in Gramercy, Louisiana, earning "freight" in the amount of $9,293.25. The final "freight" payment was made August 1, 1962. The issue then is whether the "freight" payment accruing to the time-charterer is considered a fund from which payment of crew's wages could have been made by the owner or its agents.

■ The seamen's lien for penalty wages is accorded the same sacred priority as the lien for wages, and attaches to proceeds from both the sale of the vessel and the earned "freight". Clifford v. Merritt-Chapman & Scott Corp., 57 F.2d 1021 (5 Cir. 1932); The Else, D. C., 27 F.2d 935 (1928). However, the lien for penalty wages arises under 46 U.S.C.A. § 596 only where there has been a refusal to pay regular wages when due. That statute is designed to prevent "arbitrary refusals to pay wages, and to induce prompt payment *when payment is possible.*" (Emphasis supplied.) Collie v. Fergusson, 281 U.S. 52, 56, 50 S.Ct. 189, 191 (1930). Inherent in the language of the statute then is a pre-requisite that some fund exist out of which the owner or its agents could have paid the regular wages when they became due, or paid them sometime thereafter.

■ Libellants point to the "freight" payment from the sugar cargo as the fund from which wages could have been paid. At the time that cargo was transported though, the vessel was under time-charter and the "freight" payment belonged not to the owner of the vessel, but to the time-charterer. In nautical parlance, as this case demonstrates, the term "freight" has a specific meaning. That meaning is indicated at 1 Benedict on Admiralty 284, § 92:

"All agreements for the conveyance of persons or the carriage of property by vessels are contracts of affreightment and all hire or reward for the use of vessels is freight."

Here the vessel's owner had no agreement for the carriage of property, only a time-charter contract of hire for the use of the vessel. Thus the "freight" earned by the owner consisted of the charter hire payments and not the proceeds from the contract of affreightment.

■■ How can it be said then that the shipowner could have paid the crew's wages out of the time-charterer's receipts and still retain a right to receive the charter hire payments? It would be inequitable and probably contrary to the terms of the charter party agreement.[1] Moreover, crew members are the shipowner's men, not the time-charterer's. Bergan v. International Freighting Corp., 254 F.2d 231 (2 Cir. 1958). Proctor for libellants has not cited, nor could this Court locate, any case wherein a shipowner was permitted to pay wages out of the time-charterer's proceeds from a contract of affreightment. The only conclusion then is that the time-

1. The time-charter agreement between Ahern Shipping Co., Ltd., the former owner of the vessel, and Florida Inter-Island Shipping Corp., is not in the record.

charterer's "freight" receipts did not constitute a fund within the control of the owner from which wages could have been paid. Hence, to that extent, the refusal was for sufficient cause.

On the other hand, while the sugar cargo "freight" receipts were not available for the payment of wages, a statement of account in the record indicates that at some time between December 31, 1961 and June 30, 1962 Miami collected $3,647.08 on behalf of the vessel from Florida Inter-Island Shipping Corp. for a charter party and applied that amount against advances it had made for the vessel. It may be that those funds could have been used to pay wages.

Suffice to say that at this point there remains a genuine issue of material fact precluding the granting of summary judgment under Admiralty Rule 58. Therefore, it is ordered that libellant's motion for summary judgment on the issue of penalty wages be, and the same is hereby denied.