Thomas I. FITZGERALD, Public Administrator of the County of New York, as Administrator of the goods, chattels and credits of Andres San Martin, Deceased, Plaintiff-Appellant,

v.

UNITED STATES LINES COMPANY, Defendant.

No. 194, Docket 26716.

United States Court of Appeals Second Circuit.

Argued Jan. 12, 1962.

Decided June 29, 1962.

Theodore H. Friedman, Benjamin Glickman, Jacob Rassner, New York City, for plaintiff-appellant.

Matthew L. Danahar, Kirlin, Campbell & Keating, New York City (John A. Dowd, New York City, of counsel), for defendant.

Before LUMBARD, Chief Judge, and CLARK, WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS and MARSHALL, Circuit Judges.

FRIENDLY, Circuit Judge.

This action against United States Lines Company, begun in the Southern District of New York by Andres San Martin, a seaman employed on defendant's vessel, the S.S. American Reporter, has been continued, on his death after trial, by the Public Administrator of New York County. The complaint, filed in 1955 and brought to trial in 1960, alleged two causes of action. The first, relying specifically upon the Jones Act, 46 U.S.C.A. § 688, asserted that by reason of the unseaworthiness of the American Reporter and defendant's negligence, plaintiff had been caused to twist and strain his back while assigned to carry barrels of cement up the ship's gangway on November 6, 1954, and that defendant was further negligent "in failing to provide the plaintiff with timely, adequate, proper and competent medical care and attention and maintenance and cure, thereby aggravating his condition," with total damages of $75,000. The second was for maintenance and cure in the sum of $10,-000.

Plaintiff's citizenship was not alleged. Defendant was alleged to be, in paragraph First, "a domestic corporation organized and existing under and by virtue of the Laws of the State of New York" and, in paragraph Second, "a foreign corporation duly licensed to do business within the State of New York." Paragraph Third alleged that "the defendant had an office for the transaction of business in the Borough of Manhattan, City and State of New York." Compliance with F.R.Civ.Proc. 8(a) (1), 28 U.S.C., demanding "a short and plain statement of the grounds upon which the court's jurisdiction depends," was evidently intended to be met by paragraph Ninth: "Plaintiff elects to maintain this action under the provisions of Section 33 of the Merchant Seamen's Act as of June 15, 1920, C. 250 41 Stat. 1007 otherwise known as the Jones Act." There was endorsed on the complaint "Plaintiff Demands a Jury Trial." In its answer defendant denied being a New York corporation and admitted being a foreign corporation and having a New York office.

Before a jury was chosen, Judge Levet directed that the claim for maintenance and cure be tried to the court only; counsel for plaintiff excepted. On the following morning, discussion of this was resumed in the robing room before the taking of testimony began. Plaintiff's counsel stated that jury trial of maintenance and cure "is a matter of choice for the District Court," and also that "The plaintiff is entitled to a jury on this action which is properly before this Court on a common-law basis"—without further amplification save for reference to "the authority of Jenkins v. Walker" [presumably Jenkins v. Roderick, 156 F.Supp. 299 (D.Mass.1957)], and "the discussion of that case by the Supreme Court in Romero v. International Terminal." The judge adhered to his ruling "that in this court, in the Second Circuit, it is permissible and authorized to try maintenance and cure to the Court."

At the conclusion of the trial Judge Levet submitted to the jury six questions, relating respectively to negligence, unseaworthiness, resulting injury, amount of damages, contributory negligence, and its degree. The jury gave negative answers to the first two questions; consequently, in accordance with the judge's direction, it did not answer the last four. Appellant makes no complaint as to the form of the questions or the judge's charge; he does complain about certain rulings excluding evidence, which we will consider below.

In an opinion later filed, the judge found that San Martin had incurred a back injury while in the service of the ship and also suffered from a cardiovascular condition due in part to untreated syphilis; that he had reached the point of maximum recovery for both disabilities on March 1, 1955, when he was discharged from a United States Public Health Service Hospital; and that liability for maintenance and cure was thus limited to the period, 28 days, before he entered the hospital, to wit, $224. Although appellant criticizes the judge's determination with respect to maintenance and cure, his principal complaint on that aspect of the case is that the judge should not have made any determination but ought to have left the issue to the jury; as to the criticisms apart from this principal complaint, it suffices to say that the judge's determination was not in any view clearly erroneous.

Because the analysis of the right to jury trial of the claim for maintenance and cure made by a majority of the panel conflicted with a recent dictum on the subject by this Court, see Mr. Justice Frankfurter in Western Pacific Railroad Case, Western Pacific Railroad v. Western Pac. R. Co., 345 U.S. 247, 270, 73 S.Ct. 656, 97 L.Ed. 986 (1953), and also because the problem constantly recurs in the district courts, we determined that the case should be considered *in banc*, upon the briefs and argument already had. This consideration has produced a variety of views, with none commanding a majority. It will thus be convenient to dispose of the issues relating to the trial of the personal injury claim.

which none of us would have thought appropriate for *in banc* consideration if standing alone, before proceeding to the question of jury trial of the claim for maintenance and cure.

## I.

█ Certain of appellant's objections to rulings excluding evidence on his personal injury claim, relating to San Martin's explanation of his failure to make earlier complaint about his injury, his colloquy with physicians at the Public Health Service clinics and hospital, and a report by a physician who testified for him, are rendered moot by the special verdict negating unseaworthiness or negligence; we need concern ourselves only with the exclusion of evidence relating to the accident itself.

██ Appellant complains that San Martin was not allowed, on direct examination, to testify that he had objected to carrying the two heavy barrels of cement up the gangway. Although we can see no sufficient reason for this ruling, it was not prejudicial since counsel returned to the subject on redirect and, without objection, elicited testimony that San Martin had told his boss, Manzo, the mission was "too dangerous" and the boss had answered "You have to do anyway." Appellant next urges that San Martin was not allowed to testify why he moved from side to side while ascending the gangway. Again the ruling seems needlessly severe but not, as matters developed, prejudicial. The evident purpose of the testimony was to show the gangway was unstable. San Martin was allowed to testify that he moved and that the gangway moved; the physical layout of the gangway was in evidence; and the judge stated in his charge, without exception from plaintiff's counsel, "As appears by the stipulation read to you this morning, it is agreed that the nature and position of the gangway does not enter into the disposition of this case."

█ Finally, and most important, appellant objects that one of San Martin's fellow-employees, Murrell, was not allowed to answer a question as to conversations with Manzo about bringing aboard engine stores within a month before the accident, even after it had been shown that the weights of the stores on the prior occasion were less than the 100 pounds San Martin was ordered to carry on the day of the alleged injury. When the judge inquired as to the pertinency of this testimony, counsel answered, not very informatively, "Prior and similar loading procedure," to which the court responded "It is too remote." Assuming in appellant's favor, perhaps somewhat generously, that counsel's remark was an offer to prove that Murrell had complained to Manzo about the manual loading of lesser weights, the evidence should have been admitted. Knowledge of danger is relevant to a determination of negligence, the Nitro-Glycerin Case, 15 Wall. 524, 536–537, 82 U.S. 524, 536–537, 21 L.Ed. 206 (1873), and evidence that such knowledge was gained through an express communication is admissible. 2 Wigmore, Evidence (3d ed. 1940) § 245; New York Life Ins. Co. v. Seighman, 140 F.2d 930, 932–933 (6 Cir., 1944); Evans v. Pennsylvania R. R., 255 F.2d 205, 209–210, 70 A.L.R.2d 158 (3 Cir., 1958); Smith v. Whittier, 95 Cal. 279, 30 P. 529 (1892); Jenkins v. Reichert, 125 Conn. 258, 5 A.2d 6 (1939); Dowling v. L. H. Shattuck, Inc., 91 N.H. 234, 17 A.2d 529 (1941); Killian v. Andrews Mfg. Co., 187 N.C. 810, 123 S.E. 86 (1924). However, the probative effect of the excluded evidence would not have been great. The case differs significantly from those cited where the dangers were defects in machinery or property, things which the defendant might not notice on his own inspection and, in many instances, so technical that he might not appreciate the danger if he did; in such cases proof of notice is highly critical since there may be no basis for finding the defendant negligent without it. Here the issue related to the safety of the carrying of certain weights by men rather than machines. The jury had the evidence of experts called by both parties, San Martin's own testimony he had told Manzo the procedure was "too danger-

ous," and its own common sense; if the jury was not persuaded of negligence on that evidence, it hardly would have been by the addition of testimony that a fellow employee had complained about the procedure on a previous occasion. In Dowling v. L. H. Shattuck, Inc., supra, where the evidence of a prior communication, held properly admitted, was far more important, the court implied that the trial judge would also have been upheld if he had excluded it. In view of this and the recognized discretion of trial judges to exclude for remoteness, see, e. g., Duvall v. Birden, 124 Conn. 43, 198 A. 255 (1938); Hutteball v. Montgomery, 187 Wash. 516, 60 P.2d 679 (1936), reversal with respect to the personal injury claim is not called for, even though a more liberal concept of relevancy would have conformed better with modern trends in the law of evidence.

## II.

We can also unanimously dispose of one argument of appellant with respect to the denial of jury trial, namely, that the judge erroneously reserved for himself plaintiff's claim for damages from negligent failure to furnish care or maintenance and cure. Appellee does not dispute that such a claim is conferred by the Jones Act, with the attendant right to trial by jury, Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368 (1932); Vaughan v. Atkinson, 82 S.Ct. 997 (1962). However, although the complaint alleged such a claim, no evidence was adduced to support it, and plaintiff's counsel made no request that any question on this subject be included in those propounded to the jury. We cannot assume the judge would have refused to submit such a question if the evidence had warranted.

## III.

Appellant's contention that San Martin was entitled to a jury trial on his claim for maintenance and cure rests on two alternative grounds: (1) that San Martin had invoked the court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332; and (2) that he was entitled to a jury trial irrespective of this because his claim for maintenance and cure was "pendent" to his claim under the Jones Act. This section of the opinion deals with the first ground.

There are many statements by commentators that a seaman properly invoking the jurisdiction of the district court because of diverse citizenship has a right to a jury trial of a claim for maintenance and cure, whether this is asserted independently or joined with other claims. See, e. g., Benedict, American Admiralty (1st ed. 1850 & 2d ed. 1870), p. 107; 1 id. (6th ed. 1940), p. 36; 5 Moore, Federal Practice (1951), p. 284; 71 Harv.L.Rev. 1359, 1360 (1958); Currie, The Silver Oar and All That: A Study of the Romero Case, 27 U.Chi.L. Rev. 1, 5 (1959);[1] The Supreme Court, 1958 Term, 73 Harv.L.Rev. 126, 139 (1959). The reasoning stems from § 9 of the Judiciary Act of 1789, 1 Stat. 77, carried forward into 28 U.S.C. § 1333(1), wherein the grant to the district courts of "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction" was qualified with the famous reservation, "saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." The common law is competent to give a common law remedy for breach of the obligation, created by the general maritime law, to pay maintenance and cure, namely, a money judgment against the operator of the ship. The saving clause thus permits a suit to that end in a state court, where jury trial may usually be had, see Leon v. Galceran, 11 Wall. 185, 78 U.S. 185, 20 L.Ed. 74 (1871); Norton v. Switzer, 93 U.S. 355, 356, 23 L.Ed. 903 (1876); Garrett v. Moore-McCormack Co., Inc., 317

1. Subject, however, to a caveat, "Congress probably intended that if he sued in the federal court (as he might if there were diversity of citizenship) he should have the right to a jury trial." [Emphasis supplied.] Perhaps the "probably" was due to the considerations outlined in fn. 6.

U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). Hence, it is reasoned, if such a suit were removed to the Federal court because of diversity or brought there on that ground, the saving clause requires jury trial.

■ In view of the plausibility of the argument and the unanimity of the commentators, it is surprising that the first case we have found that specifically decided in favor of a jury trial in a Federal diversity suit on a maritime claim (in that case personal injury caused by unseaworthiness) is Philadelphia & Reading R. Co. v. Berg, 274 F. 534, 539 (3 Cir., 1921), affirming 266 F. 591 (E.D. Pa.1920),[2] cert. denied, 257 U.S. 638, 42 S.Ct. 50, 66 L.Ed. 410 (1921). The Court of Appeals noted that "The Supreme Court of the United States has not passed upon this specific question, but the right to try on the law site [sic] of the District Court a cause arising in admiralty has been recognized in the Circuit Court of Appeals for the Second Circuit," citing John A. Roebling's Sons Co. of New York v. Erickson, 261 F. 986 (2 Cir., 1919), cert. denied, 252 U.S. 585, 40 S.Ct. 394, 64 L.Ed. 729 (1920); Hanrahan v. Pacific Transport Co., 262 F. 951 (2 Cir., 1919), cert. denied, 252 U.S. 579, 40 S.Ct. 345, 64 L.Ed. 726 (1920), and Storgard v. France & Canada S.S. Corp., 263 F. 545 (2 Cir.), cert. denied, 252 U.S. 585, 40 S.Ct. 394, 64 L.Ed. 729 (1920). Examination of the papers on appeal in those suits, all for accidents antedating the Jones Act, shows that diversity did exist and maritime claims (unseaworthiness in all three cases and also maintenance and cure in the first) were submitted to the jury; however, such submission was not disputed, and the point is not discussed.[3] Since the Berg case a considerable number of opinions have recognized, either by dictum or by decision, the right to jury trial of a claim for maintenance and cure and other maritime claims of seamen filed on the "law side" of the Federal court on the ground of diversity; Thornes v. Socony Vacuum Oil Co., 37 F.Supp. 616 (S.D.N.Y.1940); McDonald v. Cape Cod Trawling Corp., 71 F.Supp. 888, 890 (D.Mass.1947) [dictum]; Jordine v. Walling, 185 F.2d 662, 671 (3 Cir., 1950) [dictum]; Watlack v. North Atlantic & Gulf SS. Co., Inc., 107 F.Supp. 162 (E.D.Pa.1952), aff'd, 202 F.2d 280 (3 Cir., 1953); Williams v. Tide Water Associated Oil Co., 227 F.2d 791 (9 Cir., 1955), cert. denied 350 U.S. 960, 76 S.Ct. 348, 100 L.Ed. 834 (1956); Troupe v. Chicago, D. and G. Bay Transit Co., 234 F.2d 253, 258 (2 Cir., 1956); Morrow v. Point Towing Co., 187 F.Supp. 168 (W.D.Pa.1960).[4] See also McAfoos v. Canadian Pacific Steamships, Ltd., 243 F.2d 270, 274 (2 Cir.), cert. denied, 355 U.S. 823, 78 S.Ct. 32, 2 L.Ed.2d 39 (1957); Bartholomew v. Universe Tankships, Inc., 263 F.2d 437, 451 (2 Cir.) (concurring opinion), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959).[5] In any event, despite a dubious

2. The accident quite clearly antedated the Jones Act, which became effective June 5, 1920, 41 Stat. 1007.

3. The Third Circuit's citation of the Second Circuit cases was likely due to the fact that plaintiff's counsel in all four cases was the late Silas B. Axtell.

4. Some of the cases suggest that to entitle a diversity plaintiff to a jury trial of a maritime claim joined with a claim at law, the maritime claim alone must satisfy the jurisdictional amount, see Morrow v. Point Towing Co., D.C., 187 F.Supp. at 169. Normally aggregation for this purpose of claims properly joined is allowed, see 3 Moore, Federal Practice (2d ed. 1948), p. 1815 and cases cited note 5, also 1961 supplement pp. 160–161 and cases cited note 5.

5. It may also be said with much force that statements by the Supreme Court that where diversity exists, a plaintiff may have an action "at law" in the Federal courts to enforce a maritime claim, see The Belfast, 7 Wall. 624, 643, 74 U.S. 624, 643, 19 L.Ed. 266 (1869); Leon v. Galceran, 11 Wall. 188, 78 U.S. 188, 20 L.Ed. 74; Steamboat Company v. Chase, 16 Wall. 522, 533, 83 U.S. 522, 533, 21 L.Ed. 369 (1873); Norton v. Switzer, 93 U.S. at 356, 23 L.Ed. 903; and Romero v. International Terminal Operating Co., 358 U.S. 354, 362, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), implicitly included that char-

"archeological" argument, see Romero v. International Terminal Operating Co., Inc., 358 U.S. 354, 370, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), that might have been made from other language in the Act of 1789, an argument which, as a matter of possible interest to historians, we state and refute in the margin,[6] the point has.

acteristic feature of an action at law, namely, a jury trial, even though no specific reference to that was made. See also *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

6. Section 9 of the First Judiciary Act, which gave the district courts, *inter alia*, "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction," subject to the saving clause, provided that "the trial of issues in fact, in the district courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury." Since the admiralty and maritime jurisdiction of the district courts under § 9 extended only to "traditional" admiralty causes, such as proceedings *in rem* and suits *in personam* where the complaining party chose to call himself a libelant rather than a plaintiff, Leon v. Galceran, 11 Wall. at 188, 78 U.S. at 188; Mr. Justice Brennan dissenting in Romero v. International Terminal Operating Co., 358 U.S. at 396, 79 S.Ct. 468, the last quoted provision in § 9 would not itself weigh against the view that jury trial could be had in a suit on the "law side" where diversity existed. However, § 12 of the Act of 1789 provided that in the circuit courts, in which diversity jurisdiction had been lodged, "the trial of issues in fact * * * shall, on all suits, except those of equity, and of admiralty, and maritime jurisdiction, be by jury," and § 19 made it "the duty of circuit courts, in causes in equity and of admiralty and maritime jurisdiction, to cause the facts on which they found their sentence or decree, fully to appear upon the record either from the pleadings and decree itself, or a state of the case agreed by the parties, or their counsel, or if they disagree by a stating of the case by the court." Since the only suits of admiralty and maritime jurisdiction that could be brought on for initial trial in the circuit courts seem to have been those under the saving clause, notably cases of diverse citizenship, either originally, § 11, or on removal, § 12, it could be argued that the language of § 12 excluding jury trial of issues of fact in admiralty and maritime matters, and of § 19 requiring the court to find the facts in such cases, would have had no purpose unless it covered suits under the saving clause where the source of the right lay in general maritime law.

The answer, perhaps not a wholly satisfactory one, is that the language of §§ 12 and 19 of the Act of 1789 as to admiralty and maritime matters related rather to appeals to the circuit courts "from final decrees in a district court in causes of admiralty and maritime jurisdiction, where the matter in dispute exceeds the sum or value of three hundred dollars," authorized by § 21, wherein in accordance with traditional admiralty practice, evidence could be taken, see, e.g., Yeaton v. United States, 5 Cranch 281, 9 U.S. 281, 3 L.Ed. 101 (1809); The Lucille, 19 Wall. 73, 86 U.S. 73, 22 L.Ed. 64 (1874); The Charles Morgan v. Kouns, 115 U.S. 69, 5 S.Ct. 1172, 29 L.Ed. 316 (1885); Irvine v. The Hesper, 122 U.S. 256, 7 S.Ct. 1177, 30 L. Ed. 1175 (1887). This view gains some support from § 1 of the Act of February 16, 1875, 18 Stat. 315, which provided "That the circuit courts of the United States, in deciding causes of admiralty and maritime jurisdiction on the instance-side of the court, shall find the facts and the conclusions of law upon which it renders its judgment or decrees, and shall state the facts and conclusions of law separately"—substantially as stated in § 19 of the Act of 1789—and then went on "And in finding the facts, as before provided, said court may, upon the consent of the parties, who shall have appeared and put any matter of fact in issue * * * impanel a jury of not less than five and not more than twelve persons, to whom shall be submitted the issues of fact in such cause, under the direction of the court, as in cases at common law. And the finding of such jury, unless set aside for lawful cause, shall be entered of record, and stand as the finding of the court, upon which judgment shall be entered according to law." See The Abbotsford, 98 U.S. 440, 25 L.Ed. 198 (1879). Benedict, American Admiralty (3d ed. 1900), p. 104, says that this statute was intended to deal with appeals to the circuit court but that the author had never heard of a case where a jury had been used. See also notes to 28 U.S.C. § 771 (1940 ed.) and Munson S.S. Line v. Miramar SS. Co., 167 F. 960 (2 Cir.), cert. denied. 214 U.S. 526, 29 S.Ct. 704, 53 L.Ed. 1068 (1909).

In addition to this explanation, it seems most unlikely that, with the enthusiasm of the founders for jury trial and their adoption of Coke's "enmity" of admiralty jurisdiction (see Buller, J., in Smart v.

now been placed beyond all doubt by language in a recent Supreme Court decision, Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

 However, recognition of this rule does not call for reversal here. When the issue of jury trial arose, the judge had nothing before him save the pleadings. The complaint, on which the jury demand was endorsed, gave no indication of reliance on diversity; the pleader was so little concerned with that subject that he made no allegation of plaintiff's citizenship and alleged that defendant both was and wasn't a citizen of New York, although with an office there. No one called the judge's attention to the answer's disclaimer of defendant's New York citizenship—along with an admission of a New York office, which under the law applicable to suits brought after July 25, 1958, might well have negated diversity if plaintiff were a New York citizen, 28 U.S.C. § 1332(c). Neither the judge nor, so far as we can see, anyone else then had any idea that Federal jurisdiction was being invoked on any basis other than the Jones Act, or that jury trial of the claim for maintenance and cure was being claimed on any basis other than "pendency" to it—"pendency" was the point of the authorities cited. Counsel's single reference to a "common-law basis" was quite insufficient to apprise the judge of a theory of diversity nowhere disclosed.

 Later, in the course of testifying on the merits, San Martin said he had been born in Spain in 1897, had come to the United States in 1915, had joined the American Reporter in New York in 1953, and had lived in New York since his discharge from the Public Health Hospital in 1955. This, appellant says, shows that San Martin was a citizen either of Spain or of New York, so that diversity in fact existed. This was enough so that if the judge had altered his prior ruling and sent the maintenance and cure claim to the jury, we would affirm, since submission to the jury would have been proper on the facts as they later appeared, and we would conform the pleading to the proof, Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 234 F.2d 253, 257–258 (2 Cir., 1956); see Brooks v. Yawkey, 200 F.2d 663, 664 (1 Cir., 1953). However, counsel did not suggest to the judge that San Martin's statements, made in the course of testifying generally, called for reconsideration of his earlier rulings as to jury trial. We cannot properly direct a busy District Court to retry San Martin's claim for maintenance and cure before a jury, after a fair trial before a judge, on a ground for jury trial not disclosed in the complaint and never brought to the judge's attention after it appeared.

IV.

 We thus come to appellant's alternative contention that, even if diversity was not sufficiently made out to render the denial of a jury trial of the claim for maintenance and cure erroneous on that score, San Martin was entitled to such a trial of that claim on the basis of

Wolff, 3 T.R. 323, 348, 100 Eng.Regp. 600, 613 (1789); 1 Holdsworth, History of English Law (3 ed. 1922), pp. 556–557; the resolution of the Massachusetts legislature quoted in 1 Holdsworth at p. 558 fn. 2; and the concurring opinion of Mr. Justice Johnson in Ramsay v. Allegre, 12 Wheat. 611, 614, 25 U.S. 611, 614, 6 L.Ed. 746 (1827)), the framers of the First Judiciary Act could have meant to permit an out-state defendant sued by an in-state plaintiff on a maritime claim in a state court to prevent, by removal to the circuit court, a jury trial the plaintiff could otherwise have had, or to deprive the in-state defendant sued by the out-state

plaintiff in the circuit court of such a trial.

The provisions of the First Judiciary Act here discussed remained in the statute book, save as modified by 5 Stat. 726 (1845), now 28 U.S.C. § 1873, with respect to shipping upon the Great Lakes, until 1948, see Rev.Stat. §§ 566 and 648; Act of March 3, 1875, § 3, 18 Stat. 471; Judicial Code of 1911, § 291, 36 Stat. 1167; 28 U.S.C. § 770 (1940 ed.). The repeal was on the explicit ground that the subject was "covered by rule 38 of the Federal Rules of Civil Procedure," see Reviser's Note to 28 U.S.C. § 1873.

"pendent jurisdiction." In contrast to the argument based on diversity, this contention was raised below with sufficient clarity to require us to consider a question the Supreme Court left open in Romero, 358 U.S. at 381, 79 S.Ct. 468, 3 L.Ed.2d 368, namely, whether in a non-diversity case where a substantial claim has been asserted under the Jones Act, the District Court may and, if so, ought submit to the jury for final determination a claim for maintenance and cure which has been joined with it. On this we are divided. Chief Judge LUMBARD, Judges MOORE and KAUFMAN and I, for whom the balance of this opinion speaks, answer the first half of the question in the negative and do not reach the second; Judges WATERMAN and SMITH, concurring for affirmance, differ with us in holding that in such a case the judge has discretion so to submit to the jury a claim for maintenance and cure arising out of the same event as the Jones Act claim; Judges CLARK, HAYS and MARSHALL believe jury trial of the joined claim for maintenance and cure was here required.

(1) By explicit statutory direction an action under the Jones Act is "an action for damages at law, with the right of trial by jury," 46 U.S.C.A. § 688. As "an action * * * at law," it is governed by the Federal Rules of Civil Procedure, F.R.Civ.Proc. 1, despite the inapplicability of those rules "to proceedings in admiralty," F.R.Civ.Proc. 81(a) (1). A claim for maintenance and cure may properly be joined in such an action under the broad language of F.R.Civ. Proc. 18(a). We say this even though the claim is founded on the maritime law and the rule refers to the joinder of "claims either legal or equitable or both," words which we read as inserted, *ex majore cautela*, to prevent future judicial adherence to traditional distinctions against the joinder of legal and equitable claims, not to prohibit the joinder of claims under maritime law which the courts already permitted.[7]

The mode of trial in actions governed by the Rules is dealt with, clearly and comprehensively, in F.R.Civ.Proc. 38 and 39. These rules set up a basic division between issues as to which the right of jury trial is "declared by the Seventh Amendment * * * or * * * given by a statute of the United States," and others. As to the former the right "shall be preserved to the parties inviolate," F.R.Civ.Proc. 38(a), subject only to timely demand, F.R.Civ.Proc. 38(b); even when timely demand has not been made, the court may in its discretion "upon motion" order a jury trial of such issues, F.R.Civ.Proc. 39(b). However, under the plain language of the Rules, that is the limit of the court's freedom. If the issue is not one triable to a jury as of right, the court is limited to an advisory jury, unless both parties consent to "a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right." F.R.Civ.Proc. 39(c). This meshes with the direction in Rule 52(a) that in non-jury matters "the court shall find the facts specially and state separately its conclusions of law thereon," a meshing made all the plainer by

---

7. See Stevens v. R. O'Brien & Co., 62 F. 2d 632, 633 (1 Cir.1933). Such joinder continued to be upheld in the First Circuit after adoption of the Federal Rules, Nolan v. General Seafoods Corp., 112 F. 2d 515, 517 (1 Cir.1940); Bay State Dredging & Contracting Co. v. Porter, 153 F.2d 827 (1 Cir.1946), both antedating the First Circuit's position, Jansson v. Swedish American Line, 185 F.2d 212, 217–218, 30 A.L.R.2d 1385 (1950) and Doucette v. Vincent, 194 F.2d 834, 836 (1 Cir.1952), with respect to the effect of 28 U.S.C. § 1331 overruled in the Romero case. Footnote 5 to Chief Judge Magru-

der's opinion in the Doucette case states that diversity was not alleged in any of these three cases and that in Nolan the claim for maintenance and cure was for less than $3,000. 194 F.2d at 840 fn. 5.

Joinder has also been upheld in the Third Circuit, Lindquist v. Dilkes, 127 F. 2d 21, 25 (1942) and in the Seventh, Mullen v. Fitz Simons & Connell Dredge & Dock Co., 172 F.2d 601, 604 (1948). In this Circuit claims for maintenance and cure have long been joined with Jones Act claims, apparently as here without objection, even when there was no diversity.

the 1946 amendment explicitly making Rule 52(a) applicable when there has been an advisory jury. When a complaint joins claims differing in character, each is to be given the mode of trial appropriate to its nature, Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Ring v. Spina, 166 F.2d 546, 550 (2 Cir.), cert. denied, 335 U.S. 813, 69 S.Ct. 30, 93 L.Ed. 368 (1948); Orenstein v. United States, 191 F.2d 184 (1 Cir., 1951); Tanimura v. United States, 195 F.2d 329 (9 Cir., 1952); Leimer v. Woods, 196 F.2d 828 (8 Cir., 1952); Schaefer v. Gunzburg, 246 F.2d 11 (9 Cir.), cert. denied, 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43 (1957); Chappell & Co. v. Palermo Cafe Co., 249 F.2d 77 (1 Cir., 1957), although a prior jury verdict on a "legal" issue may conclusively determine an "equitable" one, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed. 2d 988 (1959).

The sharp distinction made between the court's discretion to order an ordinary jury trial on an issue where this might have been but was not demanded, Rule 39(b), and the limitations imposed upon the court, Rule 39(c), with respect to issues "not triable of right," forbids a construction permitting a judge to order "a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right" on an issue where no right to such a trial exists, merely because he might deem this convenient. Nothing to the contrary is indicated by decisions that an appellate court will not always reverse because of erroneous grant of a jury trial, Hurwitz v. Hurwitz, 78 U.S.App.D.C. 66, 136 F.2d 796, 799, 148 A.L.R. 226 (D.C.Cir., 1943); cf. Cargill, Incorporated v. Commodity Credit

Corporation, 275 F.2d 745 (2 Cir., 1960), as it would be obliged to do for erroneous denial of one; the question is how to obey the Rules, not the consequence of disobeying them. We must confess that we can now see no sufficient reason why the Rules should be so rigidly drawn;[8] we should think it desirable for a judge to have discretion to send to "a jury whose verdict has the same effect as if trial by jury had been a matter of right" all or part of equitable or maritime claims closely related to other claims on which jury trial is being had as of right, without as well as with "the consent of both parties,"[9] and would hope that those now engaged in revising the Rules would consider such a change. However, the language of the Rules is too clear for any such reading, and we are therefore obliged to reject the unexplained *per curiam* dictum of a divided court *in banc,* Reardon v. California Tanker Company, 260 F.2d 369, 376 (2 Cir., 1958), cert. denied, 359 U.S. 926, 79 S.Ct. 609, 3 L.Ed.2d 628 (1959), that the mode of trial of a claim for maintenance, cure and wages joined with a claim for personal injury under the Jones Act rests in the discretion of the trial court, and address ourselves to the issue whether San Martin was given the right to jury trial of that claim "by the Seventh Amendment to the Constitution or * * * a statute of the United States," F.R.Civ.Proc. 38(a).

(2) Appellant does not contend that jury trial of a claim for maintenance and cure is "declared by the Seventh Amendment." The guarantee of jury trial in that amendment is limited to "suits at common law," the "common law" being, in Mr. Justice Story's words, "the common law of England, the grand reservoir of all our jurisprudence." United States

---

8. Perhaps the Committee justifiably thought it had done pretty well in accomplishing the merger of law and equity and did not wish to risk further ire from the proponents of equity by what might then have seemed a rather drastic proposal to give the judge discretion to order ordinary jury trial of an equitable claim.

9. For example, a judge confronted with a maintenance and cure claim in a case

such as this might like to have the jury determine finally, rather than on a merely advisory basis, whether plaintiff's ailment arose while in the service of the ship, since the jury would have to consider this on the personal injury claim, but reserve for himself the purely medical issue when maximum cure was effected if the verdict entitled the plaintiff to some award.

v. Wonson, 28 Fed.Cas. 745, 750 (C.C.D. Mass.1812). The amendment is "limited to rights and remedies peculiarly legal in their nature," Shields v. Thomas, 18 How. 253, 262, 59 U.S. 253, 262, 15 L.Ed. 368 (1856); N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48, 57 S.Ct. 615, 81 L.Ed. 893 (1937). "By common law, they [the framers] meant what the constitution denominated in the third article 'law'; not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered; or where, as in the admiralty, a mixture of public law, and maritime law and equity, was often found in the same suit." Parsons v. Bedford, 3 Pet. 433, 446–447, 28 U.S. 433, 446–447, 7 L.Ed. 732 (1830). Since longshoremen's claims "are governed by the maritime law as established by the Congress and are within the admiralty jurisdiction, the objection * * * as to the right to a trial by jury under the Seventh Amendment is unavailing," Crowell v. Benson, 285 U.S. 22, 45, 52 S.Ct. 285, 290, 76 L.Ed. 598 (1932); the same must be true as to seamen's. "Even in saving clause cases * * * where the plaintiff seeks a remedy which the common law is competent to give, there is not a *constitutional* right to jury trial; Congress could repeal the saving clause and make the federal admiralty remedy exclusive, with the clear result that there would be no right to jury trial in maritime cases." Currie, supra, at 5.

(3) In the light of the Romero decision, ruling out 28 U.S.C. § 1331 as a statute of the United States which might afford a right of jury trial on a claim for maintenance and cure, the only statutes of the United States requiring consideration are the Jones Act and the saving clause.

(a) The Jones Act provides that "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; * * *." We held in Bartholomew v. Universe Tankships, Inc., 263 F.2d 437 (2 Cir.), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959), that when a seaman suing for personal injury under the Jones Act predicated his action both on unseaworthiness and on negligence, both claims must be submitted to the jury. Judge Medina, writing for Judge Clark and himself, based this decision, 263 F.2d 446, on "the fundamental singleness of the underlying claim, the fact that the Jones Act claim and the maritime claim of unseaworthiness," both claims in tort, generally predicated on the same facts and carrying the same measure of damages, "are so intertwined factually that they cannot as a matter of practice be separated into pieces." In that sense and in that only the unseaworthiness claim was described as "pendent," 263 F.2d at 447. Judge Lumbard, concurring, proposed a further ground, 263 F.2d at 449–453, namely, "that the Jones Act, in permitting an action 'at law' for 'damages' for 'personal injury' to seamen, permitted them such an action based on the maritime doctrine of unseaworthiness as well as the legislative maritime doctrine of negligent operation." In a sense the result in the Bartholomew case followed rather inevitably from the Supreme Court's decision in Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927), that a judgment on a claim for personal injury based on unseaworthiness will bar assertion of a claim for the same injury based on negligence, and from Pate v. Standard Dredging Co., 193 F.2d 498, 502 (5 Cir., 1952), relied on by Judge Medina, 263 F.2d 446 fn. 12, holding that a claim of unseaworthiness was not a "separate and independent claim or cause of action" so as to permit removal of a Jones Act claim under 28 U.S.C. § 1441 (c). Since the claim for maintenance and cure in the Bartholomew case had

been tried to a judge in accordance with what had become the established practice in this circuit, nothing in the opinion was addressed to the mode of trial of such a claim.

It has long been recognized that the relationship of a claim for maintenance and cure to one for personal injury under the Jones Act is wholly different from the allegation of unseaworthiness in addition to negligence as a basis for the personal injury claim. The distinction was sharply drawn in Pacific S.S. Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220 (1928), by the same bench that had decided the Phillips case eighteen months before. Receipt of maintenance and cure, the Court held, did not bar a subsequent action for personal injury under the Jones Act as a judgment in respect of unseaworthiness would. Mr. Justice Sanford disavowed, 278 U.S. 136, 49 S.Ct. 75, 73 L.Ed. 220, a previous expression of his in Engel v. Davenport, 271 U.S. 33, 36, 46 S.Ct. 410, 70 L.Ed. 813 (1926), which might be taken "to mean that the right to recover compensatory damages under the new rule was granted as an alternative to the allowances covered by the old rules, including maintenance, cure and wages * * *." The right given by the Jones Act "is not an alternative of the right under the old rule to maintenance, cure and wages—which arises, quite independently of negligence, when the seaman falls sick or is injured in the service of the ship, and grows out of that which was termed in The Montezuma ([2] C.C.A.), 19 F.(2d) 355, 356, the 'personal indenture' created by the relation of the seaman to his vessel," a right "implied in law as a contractual obligation arising out of the nature of the employment" and "independent of the right to indemnity or compensatory damages for an injury caused by negligence," 278 U.S. 137–138, 49 S.Ct. 77.

It is not unnatural that, with this guidance, most Courts of Appeals took a radically different approach to the status of a claim for maintenance, cure and wages vis-a-vis a claim for personal injury under the Jones Act with which it had been joined, than with respect to the assertion of unseaworthiness in addition to negligence as a basis for recovery. The Pate decision, supra, assumed, 193 F.2d 502, that a claim for maintenance and cure constituted a "separate and independent claim" under 28 U.S.C. § 1441 (c), which would have warranted removal in a case of diverse citizenship if jurisdictional amount existed. Somewhat earlier, dealing with the very question here presented, Judge Maris had written, for a unanimous court *in banc*, that it was error to send to a jury a claim for maintenance and cure joined with a claim for personal injury under the Jones Act, Jordine v. Walling, 185 F.2d 662, 671 (3 Cir., 1950), a decision shortly followed in Mullen v. Fitz Simons & Connell Dredge & Dock Co., 191 F.2d 82, 85–86 (7 Cir.), cert. denied 342 U.S. 888, 72 S.Ct. 173, 96 L.Ed. 666 (1951). The leading text thus correctly states, "By unquestionable authority a maintenance and cure claim is 'separate and independent' from both a Jones Act claim or an unseaworthiness claim for purposes of *res judicata* or § 1441(c) or anything else." Gilmore and Black, Admiralty, p. 341. And we ourselves have recently said, in Ryan v. United States Lines Company, 303 F.2d 430 (2 Cir., 1962), that the claims are "totally different."

The differences exist both in the legal nature of the claims and in the practicalities of trial. The personal injury claim sounds in tort; the claim for maintenance, cure and wages "has its source in a relation which is contractual in origin, but given the relation, no agreement is competent to abrogate the incident," Cortes v. Baltimore Insular Line, 287 U.S. 367, 371, 53 S.Ct. 173–174, 77 L.Ed. 368 (1932); see Vaughan v. Atkinson, 82 S.Ct. 997 (1962). The amount sought is likewise different; that involved in the claim for maintenance, cure and wages is usually a small fraction of that sued for in the personal injury claim. Even though the incident contended to give rise to the personal injury claim is found never to have occurred, the seaman will still be entitled to maintenance, cure

and wages if his condition arose in the service of the ship. The litigated points on the latter claim are simply whether the condition arose in the seaman's service and when maximum cure has been effected; this is usually a contest of medical experts, on issues the former of which may have little and the latter has no relation to the personal injury claim.

However, the practice in this Circuit until 1956 seems to have been to submit a claim for maintenance and cure to the jury along with a claim under the Jones Act, even though no diversity existed. The legal basis for this and the contrary authorities in other circuits were not discussed, although the practice was noted, without disapproval, in McAllister v. Cosmopolitan Shipping Co., 169 F.2d 4 (2 Cir., 1948), rev'd on other grounds, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949); Gonzales v. United Fruit Co., 193 F.2d 479 (2 Cir., 1951); and Rosenquist v. Isthmian S.S. Co., 205 F.2d 486 (2 Cir., 1953). Weiss v. Central R. Co., 235 F.2d 309 (2 Cir., 1956), was the turning point. This Court's opinion, by Judge Clark, mentioned in a footnote that the judge had decided the maintenance and cure count, at the plaintiff's request and, apparently, without objection by the defendant—"Hence there is not involved the practice followed in this circuit of submitting the issue of maintenance and cure to the jury, along with the issue of negligence," citing the Gonzales case, supra. The footnote added "Obviously the simultaneous trial of the two claims—one to the judge sitting in admiralty and the other to the jury—is convenient and proper." This considered statement and its approving citation of Jordine v. Walling and Mullen v. Fitz Simons & Connell Dredge & Dock Co., supra, caused the district courts in this circuit generally to alter their practice so that, although unseaworthiness claims joined in Jones Act suits have regularly been submitted to the jury even though there be no diversity, claims for maintenance and cure in non-diversity cases have been reserved for trial by the judge. See, e. g., Troupe v. Chicago, D. & G. B. Transit Co., 234 F.2d 253, 256 (2 Cir., 1956); Bartholomew v. Universe Tankships, Inc., supra, cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959); Murray v. New York Central R. Co., 2 Cir., 287 F.2d 152, 153, cert. denied, 366 U.S. 945, 81 S.Ct. 1674, 6 L.Ed.2d 856 (1961); Salem v. United States Lines Co., 2 Cir., 293 F.2d 121, 124, rev'd on other grounds, 370 U.S. 31, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962). Since the district judges were following the lead we had given them in Weiss, we naturally approved; and the later dictum as to discretion, in Reardon, appears to have had little or no practical effect.

(b) It is now urged that even though the claim for maintenance, cure and wages be not "pendent" to the personal injury claim in the limited sense defined in Bartholomew, it is "pendent" in a more general sense which entitled the plaintiff to a jury trial under the "saving clause." [10] The Supreme Court pointed out in Romero, 358 U.S. 380–381, 79 S.Ct. 468, 3 L.Ed.2d 368, the anomaly of applying the "pendent jurisdiction" doctrine of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933)—that the assertion of a Federal claim permits a Federal court to decide a sufficiently related non-Federal claim otherwise outside its jurisdiction—to a claim for maintenance and cure which is always within Federal jurisdiction under 28 U.S.C. § 1333(1), as, indeed, both Judge Medina and Judge Lumbard had done a few weeks earlier in Bartholomew, 263 F.2d at 449, 455. Moreover, Hurn v. Oursler relates to the jurisdiction of a Federal court to decide a claim—not to the mode of trial; no one has ever supposed that joinder of a "state" equitable claim with a related "federal" legal claim under Hurn v. Oursler entitled the former to a

10. The change in language in the saving clause by the Judicial Code revision of 1948 is without significance—the Reviser's Note stating that the "substituted language" had been used as "simpler and more expressive of the original intent of Congress * * *" See Gilmore and Black, Admiralty (1956), 35.

jury trial. We see no reason for a different result when the joined claim is a Federal claim arising under the general maritime law.

We likewise see no force in an argument that if the door to the "law side" of the Federal court is unlocked by a claim under 28 U.S.C. § 1331, here the Jones Act, the "saving clause" takes over and gives a right to jury trial on any claim for a money judgment properly joined, despite its maritime nature, just as if the door had been unlocked by diversity, § 1332. This overlooks what the saving clause was to save. The framers of the First Judiciary Act were concerned with the many maritime claims for money judgments, which during the Revolution and under the Articles of Confederation had generally been tried in courts of the colonies or the states,[11] conveniently located to the suitors, and with jury trial. The prime purpose of the saving clause was to insure that such suits could continue to be brought and tried where and as they had been, New Jersey Steam Navigation Co. v. Merchants Bank, 6 How. 344, 390, 12 L.Ed. 465 (1848); Romero v. International Terminal Operating Co., 358 U.S. 362, 79 S.Ct 468, 3 L.Ed.2d 368. However, the grant of diversity jurisdiction allowed an out-state defendant sued by an in-state plaintiff on a maritime claim in a state court to remove such a suit to the circuit court, and a plaintiff of diverse citizenship to bring it there. In order to prevent this from altering the mode of trial, as well as to preserve for the diversity plaintiff suing in the circuit court the same mode of trial he would have had in the state court, there was developed the rule, noted in section III of this opinion, that when a maritime claim for a money judgment is heard in a Federal court

because of diversity, the saving clause entitles the parties to the same jury trial they would normally have had in the state court. It was stated from an early date that the common law remedy preserved by the saving clause existed in the Federal courts only in diversity cases, The Belfast, 7 Wall. 624, 643, 74 U.S. 624, 643, 19 L.Ed. 266 (1869); Leon v. Galceran, 11 Wall. 185, 188, 78 U.S. 185, 188, 20 L.Ed. 74 (1871); Steamboat Co. v. Chase, 16 Wall. 522–523, 83 U.S. 522, 533, 21 L.Ed. 369 (1873), to which, broadly speaking, the circuit courts were limited until 1875, 18 Stat. 470.

The saving clause considerations thus calling for a jury trial of a maritime claim in a diversity case are in no way pertinent to a non-diversity maritime claim joinable but not unitary with a statutory claim to which Congress has accorded jury trial. Existence of a related Federal statutory claim does not expose the plaintiff suing in a state court under the saving clause to a risk of removal, as diversity does; he may protect himself, by limiting his state court action to his non-statutory claim.[12] Moreover, in the Jones Act, Congress specifically provided that the new statutory claim should not itself be removable, 28 U.S.C. § 1445(a); hence even the joinder of such a claim with one for maintenance and cure does not give the defendant any right to remove the latter that he would not otherwise have had. Neither does the new statutory claim afford a non-diversity plaintiff a new opportunity to deprive the defendant of jury trial of the non-statutory claim by suing in the Federal court under § 1331—the plaintiff could always have had non-jury trial of the maritime claim by suing in admiralty under § 1333. Finally, whereas jury trial is needed to give the diversity plaintiff

11. Although some colonies and states created admiralty courts after 1776, the jurisdiction of most of these was limited to prize cases. See Putnam, How the Federal Courts Were Given Admiralty Jurisdiction, 10 Corn.L.Q. 460 (1925).

12. Although 28 U.S.C. § 1441 permits removal of "any civil action brought in a

State court of which the district courts of the United States have original jurisdiction," the saving clause forbids a literal reading that would include actions of which a district court would have jurisdiction solely because of 28 U.S.C. § 1333. Hill v. United Fruit Co., 149 F.Supp. 470 (S.D.Cal.1957).

the same right in the Federal that he would have had in the state court, there is no similar basis for Federal solicitude with respect to the non-diverse plaintiff. Hence there is no reason why a claim for maintenance and cure should stand any differently with respect to jury trial in a Federal court after the Jones Act than before, unless the very existence of the new statutory claim demands this. A unanimous Supreme Court in 1928, far closer to the Jones Act than we, unmistakably considered that the Act had left maintenance and cure exactly as this had always been, Pacific S.S. Co. v. Peterson, supra; we would see no reason for a different view even if we had the power to take one. We conclude that since neither the Jones Act nor the saving clause gave plaintiff a right to jury trial of his claim for maintenance and cure, it would have been error, under Rules 38 and 39, to grant him one, save on an advisory basis.

The judgment is affirmed.

CLARK, Circuit Judge, whom HAYS and MARSHALL, Circuit Judges, join (dissenting).

Commentators have had occasion to refer to the Jones Act, 46 U.S.C. § 688, passed in 1920, as an example of "impossibly bad drafting." Gilmore & Black, The Law of Admiralty 282 (1957). But since 1940 "the Supreme Court has been rewriting the law" and the "rewrite job has gone far enough to make it clear that a revolution has taken place." Ibid. 248. In this process, recovery for personal injuries for unseaworthiness has practically swallowed Jones Act negligence, which remains only as a convenient tag upon which to ground jurisdiction "at law" and trial by jury as granted in the statute. It is now clear that claims based on unseaworthiness and on maintenance and cure may be joined with claims for negligence, and that there is a right of trial by jury on the unseaworthiness claims so joined. Bartholomew v. Universe Tankships, Inc., 2 Cir., 263 F.2d 437, certiorari denied 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030; and see Romero v. International Terminal Operating Co., 358 U.S. 354, 380–381, 79 S.Ct. 468, 3 L.Ed.2d 368. Left undecided is the question here at issue, namely whether there is a right to jury trial on the claim for maintenance and cure when joined with a claim for Jones Act negligence.

That this is a serious and troublesome issue is shown by the three different opinions held by us on this appeal. Differences are perhaps natural in view of the clash of policy between safeguarding a cherished admiralty right, long antedating the Jones Act, on the one hand, and the clarity and convenience of the unitary approach now being achieved under that Act on the other. The rationale of that approach seems such as to include all three of the claims we are considering in situations such as here disclosed, and we have concluded that they should be treated alike so far as the form of trial is concerned.

Before analyzing this more carefully we should note that a claim for maintenance and cure may be asserted on quite other facts than those of the accident giving rise to the claims for damages for personal injuries, and the claim may therefore be one remediable only in admiralty. What we are dealing with are overlapping claims arising out of a single accident—the situation here, as expressly alleged in the complaint. Many of the cases cited by my brother FRIENDLY to show the separate nature of the maintenance-and-cure claim are those where there were not overlapping claims or where the defendant did not show that an award so made involved double recovery, while others were those where the parties failed to object to a court trial. It seems that only lately has this problem of duplicating recoveries assumed the importance it deserves. But once perceived, there is no question about the answer and the need to avoid such duplication of recovery. Thus in the second Bartholomew case we remanded specifically for the deduction of such overlapping recoveries, holding the burden on the defendant to show the amount thereof. Bartholomew

v. Universe Tankships, Inc., 2 Cir., 279 F.2d 911, 916–917, citing cases such as McCarthy v. American Eastern Corp., 3 Cir., 175 F.2d 727, certiorari denied 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561; Smith v. Lykes Bros.-Ripley S.S. Co., 5 Cir., 105 F.2d 604, certiorari denied Lykes Bros. Ripley S.S. Co. v. Smith, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505; and Reardon v. California Tanker Co., 2 Cir., 260 F.2d 369, certiorari denied 359 U.S. 926, 79 S.Ct. 609, 3 L.Ed.2d 628. See also Gilmore & Black, The Law of Admiralty 261 (1957). The inconvenience and often error of this duplicating form of trial points to the need for a rule of law preserving the unitary approach to include a claim for maintenance and cure, as well as of negligence and unseaworthiness, all arising out of the same accident. Further, the doctrine of collateral estoppel will bar relitigation of issues and facts settled in earlier litigation and may thus operate in particular instances even to cut down the jury trial now so thoroughly supported under the Bartholomew principle. See McCarthy v. American Eastern Corp., supra, 3 Cir., 175 F.2d 727, certiorari denied 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561; Runyan v. Great Lakes Dredge & Dock Co., 6 Cir., 141 F.2d 396; La Fontaine v. The G. M. McAllister, D.C.S.D.N.Y., 101 F.Supp. 826.

In the light of these well settled principles it would seem that careful analysis supports the teaching of practical convenience and necessity to the effect that the single claim or cause should be considered at the one trial. As Judge FRIENDLY shows, a presently popular rationale treats the additional admiralty claims as "pendent" to the Jones Act claim "at law" for negligence. See Bartholomew v. Universe Tankships, Inc., supra, 2 Cir., 263 F.2d 437, 448, certiorari denied 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030; Romero v. International Terminal Operating Co., supra, 358 U.S.

354, 380–381, 79 S.Ct. 468, 3 L.Ed.2d 368; Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 331, 81 S.Ct. 6, 5 L.Ed.2d 20. Another approach is that of Judge Lumbard in the first Bartholomew case, 2 Cir., 263 F.2d 437, 448, that the Jones Act itself should be construed as broad enough to include all these claims in its aegis. These are but differing ways of stating the same result, which goes back to "the fundamental singleness of the underlying claim" where "the legal theories differ somewhat," but "from the standpoint of the parties the facts all exist as a single unit." Medina, J., in 2 Cir., 263 F.2d 437, 446, 447. To the writer clarity and convenience in thinking are promoted by viewing the situation in terms of the single cause of action, the identic factual situation which may give rise to several rights of action or legal remedies. "On any realistic appraisal there should be only one cause of action for jurisdiction and hence for trial. When a seaman has been injured his total claim should not be butchered up. He should be able to put it forward either wholly in admiralty without any right of jury trial, or wholly at law with a right of jury trial on *all* the issues." 5 Moore's Federal Practice 284 (2d Ed. 1951).

This points the way to a logical as well as convenient solution. When the claim for maintenance and cure is based on a cause of action unconnected with that upon which the claims of negligence and unseaworthiness are founded, then the claim must be pursued in admiralty and there is no right to a jury trial. When, however, all the claims are based on the same cause of action, then they must be tried as a unit and the right of jury trial accorded by the Jones Act applies to all the contentions. That is the situation here under the issues tendered by the complaint; and since the plaintiff pressed his claim for jury trial, the court was in error in reserving trial to itself.[1]

---

[1] Seemingly the scholarly commentators support the unitary approach and trial by jury as the preferred course. See Currie, The Silver Oar and All That: A Study of the Romero Case, 27 U.Chi.L.Rev. 1, 4–6. 41–51, 58–65, esp. 63–64 (1959); Kurland, The Romero Case and Some Problems of Federal Jurisdiction, 73

The approach we have made accords with the authorities we have cited and is not precluded by any specific precedent, so far as we are advised. True, there is much by way of dicta or lack of discussion or even overlooking of the point, all of which adds to the confusion. Actual decision is scanty to the point of non-existence. This fact, plus undoubted dicta (in which the writer also has participated), does lend support to the approach of our brothers WATERMAN and SMITH, suggesting that we might still continue to rely upon our past statements, holding maintenance and cure a remedy always available also in admiralty, until the Supreme Court tells us otherwise. But notwithstanding our sympathy for this view, we are constrained to conclude that we must go where reason and practical necessity take us, namely to the unitary form of approach and the resulting trial by jury as we have outlined.

There remains the third approach to this issue, that set forth by Judge FRIENDLY speaking for himself and three other members of the court. We are constrained to hold this the least satisfactory of the three on policy, precedent, and logical analysis. First it is held that, while normally a jury trial may be had of maintenance and cure when jurisdiction is based on diversity of citizenship, such claim was here lost or waived by inadequate pleading or disclosure to the court. This, we suggest, is cavalier treatment of perhaps the most cherished of all procedural rights and is not justified on the record before us.[2] No precedent is cited for this novel restriction on the jury trial right. Then it is held that all claims for maintenance and cure not brought in the court's diversity jurisdiction must invariably be tried to the court. This presents the unusual spectacle of a forced court trial and of course rejects the unitary approach by arbitrary fiat and not for policy or convenience in the large number of cases to which it is applicable.[3] The result is necessarily a rigid compartmen-

Harv.L.Rev. 817, 849, 850 (1960); 73 Harv.L.Rev. 138, 142–146 (1959); 5 Moore's Federal Practice 284 (2d Ed. 1951); Gilmore & Black, The Law of Admiralty 262 (1957).

2. This is based in substance upon the failure of the complaint to set forth the plaintiff's citizenship, jurisdiction being there based on the Jones Act. But under modern civil procedure, the jury trial right comes from the Constitution, not the trial court, and such trial being once claimed (as here in the plaintiff's complaint) cannot be lost unless it is waived by written stipulation or oral stipulation made in open court. F.R. 38(b) (d), 39(a); James, Trial by Jury and the New Federal Rules of Procedure, 45 Yale L. J. 1022 (1936); Clark, Code Pleading 113–122 (2d Ed.1947). There is no requirement that a party must plead in such a way as to warn the court of his constitutional right. Actually here the plaintiff's counsel in pressing his claim in successive colloquies at the opening of trial cut short by the judge's adverse rulings made broad contentions quite adequate to cover this issue. Thus he specifically cited jury trials of state actions at law for maintenance and cure. Indeed it is difficult to see how he could have put his claim more inclusively unless he could

have foreseen the novel trend my brothers' opinion was later to take. Rather inconsistently they hold that the claim for jury trial of the issue as *pendent* to the main issue was sufficiently asserted to require disposition even though "pendent" was never mentioned in the colloquies. Further the court is bound to examine the entire record to see if San Martin's citizenship was there disclosed, Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 2 Cir., 234 F.2d 253, 257–258, and amendment of the pleadings, even on appeal, is directed by 28 U.S.C. § 1653. See Brooks v. Yawkey, 1 Cir., 200 F.2d 663, 664.

3. This appears to be a complete acceptance in this area of the law, and a rejection of our settled rule to the contrary, of the holding in Jordine v. Walling, 3 Cir., 185 F.2d 662, that jury trial of the issue of maintenance and cure constitutes reversible error. This holding, which has been widely criticized by scholars—see the writers cited in note 1 supra, and notably Professors Moore and Currie—has not been followed in the First Circuit, where the practical need of jury trials has been ably set forth by Judge Wyzanski in the oft-cited case of Jenkins v. Roderick, D. C.Mass., 156 F.Supp. 299, 304–306, following Doucette v. Vincent, 1 Cir., 194

talized system where jury trial must be had in some of the cases, and court trial in others. Since this division is unconnected with the practicalities of the situation, since in this type of case it is easy to overlook the citizenship of the parties where the Jones Act is the primary source of federal jurisdiction, we must necessarily expect reversals based on form rather than substance.[4] We fear the unsatisfactory results which will ensue from this novel formalism in the general maritime law.

Our conclusion therefore is that the district court erred in depriving the plaintiff of his asserted right to a jury trial of his entire cause of action. The judgment should therefore be reversed and the action remanded for a trial to the jury.

J. JOSEPH SMITH, Circuit Judge (concurring in the result).

Judge WATERMAN and I concur in the result reached by Judge FRIENDLY and our three colleagues who have concurred in his opinion. We affirm, with them, the action of the court below. We agree that when a maintenance and cure claim arising out of the same event that gave rise to the Jones Act claim is coupled with the Jones Act claim and therefore tried on the "law side" of the court, and the parties are of diverse citizenship,[1] the maintenance and cure claim must be tried to a jury. We agree that, when the parties are not of diverse citizenship, even though the Jones Act claim is tried to a jury, it is proper to try the maintenance and cure claim to the judge alone.

We are also of the opinion, however, and in this respect we differ from our colleagues, that in this latter situation the trial judge may deem it advisable to submit the maintenance and cure claim to the jury along with the Jones Act claim, and if this is done we would not consider such a submission erroneous but well within a proper discretion so as to preserve a unitary case.

When in a non-diversity case a maintenance and cure claim is presented for adjudication with a Jones Act claim, but the maintenance and cure claim does not arise out of the same event as the Jones Act claim, we are of the opinion that the maintenance and cure claim should always be tried to the court alone, and never submitted to the jury, even if the Jones Act claim is jury-submitted.

F.2d 834, 840, 846. We have cited with approval Professor Moore's criticism, 5 Moore's Federal Practice 281–285 (2d Ed. 1951), supra, of the Jordine case as improperly dividing up a single cause of action, and have never found error in the submission of this issue to a jury, Gonzales v. United Fruit Co., 2 Cir., 193 F. 2d 479, 480, n. 1; see also Rosenquist v. Isthmian S.S. Co., 2 Cir., 205 F.2d 486, and McAllister v. Cosmopolitan Shipping Co., 2 Cir., 169 F.2d 4, reversed on another issue 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692. A dictum in a footnote in Weiss v. Central R. Co. of N. J., 2 Cir., 235 F.2d 309, 310, n. 1, has occasionally been misread as expressing a preference for court trial of this issue, even though it cited and relied on the Gonzales case, and only ventured to suggest that the trial judge had also discretion to order a court trial. That suggestion we now believe should be withdrawn for the reasons stated in the text of this dissent.

4. The stress placed on the supposed compulsion of F.R.Civ.Proc. 39(c) seems out of place, for the rules provide only a procedure for working out the substantive rules of trial elsewhere stated, as in the Constitution or statutes. If a trial judge does take a jury verdict when he is not required to do so, error cannot be assigned on his action. Hurwitz v. Hurwitz, 78 U.S.App.D.C. 66, 136 F.2d 796, 799, 148 A.L.R. 226; Rath v. Wilgus, 110 Neb. 810, 195 N.W. 115; Groome v. Steward, 79 U.S.App.D.C. 50, 142 F.2d 756; Clark, Code Pleading 90, 102, 106, 107 (2d Ed. 1947).

1. By the phrase "diverse citizenship" we include all prerequisites for so-called "diversity jurisdiction" on the law side of a federal district court, not simply a pleading that the parties are residents of different states.